UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X

UNITED STATES OF AMERICA

    -against-                       16 Cr. 45 (RWS)

                                        SENTENCING
LUIS MEJIA,                        OPINION

                      Defendant.

------------------------------------------X

**Sweet, D.J.**

On November 17, 2016, following a jury trial, Luis Mejia ("Defendant" or "Mejia") was found guilty of conspiracy to distribute and possess with intent to distribute cocaine. Based on the conclusions set forth below, Mejia will be sentenced to 121 months' imprisonment followed by two (2) years' supervised release, subject to the scheduled sentencing hearing on May 3, 2017.

**Prior Proceedings**

Mejia is named in a one-count information filed in the Southern District of New York on January 20, 2016. Count One charged that in or about December 2015, in the Southern District of New York and elsewhere, Mejia and his codefendant Jose Rivera

1

conspired with others known and unknown to distribute and possess with the intent to distribute five kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).

On November 17, 2016, Mejia was found guilty as charged, following a jury trial.

Mejia is scheduled to be sentenced on May 3, 2017.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in <u>United States v. Booker</u>, 543 U.S. 220 (2005), and the Second Circuit's decision in <u>United States v. Crosby</u>, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the Advisory Guidelines. Thus, the sentence to be imposed here is the result of a consideration of:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed —
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

2

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for —

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

(5) any pertinent policy statement [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

3

**The Defendant**

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Defendant's personal and family history.

**The Offense Conduct**

The Court adopts the facts set forth in the PSR with respect to the offense conduct. These facts are summarized, in brief form, below.

On December 10, 2015, agents working for Customs and Border Protection (CBP) performed a physical examination of a shipping container that had arrived at the Port of Palm Beach, Florida, from the Dominican Republic and discovered a white powdery substance, which was subsequently confirmed to be cocaine. CBP weighed the cocaine and determined that it weighed approximately 98 kilograms.

On December 14, 2015, an undercover Homeland Security (HSI) agent contacted the phone number listed for the consignee on the container and spoke to Jose Rivera. During the call, the undercover HSI agent posed as an individual at the Florida Port

4

who discovered the cocaine shipment and wanted a sum of money to release the shipment to its destination in New York.

Over the next few days, the undercover agent and Rivera continued to communicate about the shipment over WhatsApp, an online secure messaging application. On December 16, 2015, Rivera provided the undercover agent with the telephone number of Luis Mejia, and the undercover agent and Mejia arranged a meeting for the next day. Mejia also provided the agent with a phone number for another individual in the Dominican Republic involved in coordinating the cocaine shipment.

Over the next week, Mejia had multiple communications, over the phone and through text, with the undercover agent regarding return of the cocaine in exchange for a cash payment. Mejia, the undercover agent, and a person in the Dominican Republic named "Raul" negotiated an agreement to exchange the cocaine for approximately $45,000.

On December 17, 2015, Rivera trailed the meeting between Mejia and a second undercover HSI agent, during which it was agreed that they would meet in the port in Brooklyn and Mejia would pay a sum of money in exchange for the cocaine shipment.

On December 21, 2015, Mejia went to Fordham Road in the Bronx and picked up the money to pay for the drugs. Rivera and Mejia met with the second undercover agent and a third undercover HSI agent at the port in Brooklyn. Mejia handed half of the agreed-upon amount in cash to the agents, and both Rivera and Mejia were subsequently arrested by the agents.

Both Rivera and Mejia were interviewed following their arrest. Mejia admitted knowledge of the drugs being shipped inside the containers and stated that he participated in the drug transaction for money.

The evidence at trial showed that this was not Mejia's first involvement with importing drugs into the country. In June 2015, Mejia and three other men visited a port in South Carolina, where they met with an undercover agent who they believed to be a dock worker who could assist them in bringing drugs through the port.

Following a jury trial, Mejia was found guilty on November 17, 2016 of conspiracy to distribute approximately 98 kilograms of cocaine.

**The Relevant Statutory Provisions**

For Count One of the Information, of which Mejia was convicted, the minimum term of imprisonment is 10 years and the maximum term is life. 21 U.S.C. §§ 846 and 841(b)(1)(A). The maximum fine is $10,000,000. 21 U.S.C. § 841(b)(1)(A). The offense is a Class A Felony. 18 U.S.C. § 3559. A special assessment of $100 per count is mandatory. 18 U.S.C. § 3013(a)(2)(A).

The Court must impose a term of supervised release of at least five years. 18 U.S.C. § 3583(b)(2); 21 U.S.C. § 841(b)(1)(C). The defendant is not eligible for probation because the offense of conviction is a Class A felony. 18 U.S.C. § 3561(a)(1); 21 U.S.C. § 841(b)(1)(A).

Because the Government agrees that Mejia meets the criteria set forth in 18 U.S.C. § 3553(f)(1)-(5), the Court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, and the Court shall impose a term of supervised release of not more than five years. 18 U.S.C. § 3553(b)(1).

**The Guidelines**

The 2016 edition of the United States Sentencing Commission Guidelines Manual, incorporating all Guideline amendments, has been used in this case for calculation purposes. U.S.S.G. § 1B1.11.

The Guideline for 21 U.S.C. § 846 and 21 U.S.C. § 841(b)(1)(A) offenses is found in U.S.S.G. § 2D1.1. That section yields a base offense level of 34. U.S.S.G. §§ 2D1.1(a)(5) and 2D1.1(c)(3). Mejia meets the criteria set forth in subdivisions (1) through (5) of subsection (a) of § 5C1.2 (Limitation on Applicability of Statutory Minimum Sentences in Certain Cases; therefore, the offense level is decreased by two levels. U.S.S.G. § 2D1.1(b)(17). The total offense level is 32.

Mejia has no criminal history points; therefore, the Criminal History Category is I.

Based on the total offense level of 32 and a Criminal History Category of I, the Guideline imprisonment range is 121 to 151 months. U.S.S.G. Ch. 5, Pt. A.

Pursuant to § 5D1.2, Application Note 2, a defendant who qualifies under § 5C1.2 is not subject to any statutory minimum sentence of supervised release. In such a case, the term of supervised release shall be determined under subsection (a). As a Class A felony, the Guideline range for a term of supervised release is two to five years. U.S.S.G. §§ 5D1.2(a)(1) and (c). Mejia is ineligible for probation. U.S.S.G. § 5B1.1.

The fine range identified in the Guidelines is $35,000 to $350,000. U.S.S.G. § 5E1.2(c)(3). If Defendant is convicted under a statute authorizing (a) a maximum fine greater than $250,000, or (b) a fine for each day of violation, the Court may impose a fine up to the maximum authorized by statute. U.S.S.G. §§ 5E1.2(c)(4), 5E1.2(h)(1). Therefore, the applicable fine range is $35,000 to $10,000,000.

Costs of prosecution shall be imposed on Defendant as required by statute. U.S.S.G. § 5E1.5. In determining whether to impose a fine and the amount of such a fine, the Court shall consider, among other factors, the expected costs to the Government of any term of probation, or term of imprisonment and term of supervised release imposed. U.S.S.G. § 5E1.2(d)(7); 18 U.S.C. § 3572(a)(6). These costs may include drug and alcohol treatment, electronic monitoring, and/or contract confinement

9

costs. The most recent advisory from the Administrative Office of the United States Courts, dated June 24, 2016, provides a daily cost of $88, a monthly cost of $2,665, and an annual cost of $31,976 for imprisonment.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), having considered the Guidelines and all of the factors set forth in § 3553(a), and having reviewed the Presentence Investigation Report and sentencing memoranda from the Defendant and the Government, the Court will impose a sentence within the Guidelines range.

The instant offense is Mejia's first known conviction, but there is information that he was involved in similar behavior in South Carolina. He is a father of two and provides care for the mother of his children as well as his elderly father.

**The Sentence**

For the instant offenses, Luis Mejia shall be sentenced to 121 months' imprisonment, with a two year term of supervised release.

The term of imprisonment shall be followed by a three (2) year term of supervised release. As mandatory conditions of his supervised release, Defendant shall:

(1) Not commit another federal, state, or local crime.

(2) Not illegally possess a controlled substance.

(3) Refrain from any unlawful use of a controlled substance and submit to one drug test within 15 days of release from imprisonment, and at least two periodic drug tests thereafter, as determined by the Court.

The standard conditions of supervision (1-13) are imposed, along with the following special conditions:

(1) Defendant will participate in an outpatient treatment program approved by the United States Probation

Office, which program may include testing to determine whether you have reverted to using drugs or alcohol. Defendant must contribute to the cost of services rendered based on his ability to pay and the availability of third-party payments. The Court authorizes the release of available drug treatment evaluations and reports, including the presentence investigation report, to the substance abuse treatment provider.

(2) Defendant must submit his person, residence, place of business, vehicle, and any property or electronic devices under his control to a search on the basis that the probation officer has reasonable suspicion that contraband or evidence of a violation of the conditions of the Defendant's supervised release may be found. The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. The Defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

(3) The Defendant must provide the probation officer with access to any requested financial information.

It is further ordered that Defendant shall pay to the United States a special assessment of $100, which shall be due immediately. Because the Defendant does not have the ability to pay a fine, the fine is waived in this case.

The Defendant has been detained without bail since his arrest. He is not a candidate for voluntary surrender. 18 U.S.C. 3142(a)(2).

12

It is so ordered.

**New York, NY**
**April 17, 2017**

---
ROBERT W. SWEET
U.S.D.J.